UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2011 MAY 13 PM 2: 33

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

MARVIN DAVIS,        §
     Petitioner,          §
                         §
v.                       §         EP-10-CV-288-FM
                         §
M. TRAVIS BRAGG, Warden, *et al.*,   §
     Respondent.          §

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Marvin Davis's ("Davis") *pro se* application for habeas corpus under 28 U.S.C. § 2241 [ECF No. 7]. Therein, Davis, a federal prisoner currently incarcerated at the Federal Correctional Institution-La Tuna, in Anthony, Texas, challenges a prison disciplinary action brought against him for possession of a cellular phone which resulted in the loss of good conduct time. In their motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 11], Respondents assert Davis is not entitled to relief. After reviewing the record and for the reasons discussed below, the Court concludes it should grant Respondents' motion, deny Davis's petition, and dismiss Davis's cause.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2009, during a "shakedown" inspection of the dormitory at the Federal Prison Camp in Talladega, Alabama, Correctional Officer R. Ramsey discovered a cellular phone under the bottom drawer of a desk in the cell assigned to Davis. During a subsequent interview with Lieutenant V. Williams, Davis admitted he kept items in the bottom drawer, but claimed the phone did not belong to him. Davis also claimed he was "cool" with his cell mate.[1] During a

---

[1] Resp't's Mot. for Summ. J. Ex. A at 6 (Discipline Hearing Officer Report) [ECF No. 11-1].

separate interview, Davis's cell mate maintained he used the top drawer and also claimed the phone did not belong to him. As a result of the discovery and the interviews, Davis received an incident report charging him with possession of a hazardous tool, a cellular phone, in violation of the Bureau of Prisons' disciplinary policy.

Davis appeared before a Unit Discipline Committee ("UDC") and claimed he was not guilty. Due to the seriousness of the offense, the UDC referred the matter to a Discipline Hearing Officer ("DHO") for a hearing. Davis received notice of his rights before the DHO and was given the opportunity to request witnesses and a staff representative. He requested neither.

Davis appeared before DHO H. Mitchell and made a statement. According to the DHO, Davis denied that he possessed the phone.

> Inmate Davis said he did not know anything about the cellular telephone and did not know how it got there. He said he and his roommate had problems and the word is his roommate and friends set him up. Inmate Davis said he stored things in the bottom drawer. He then said he never used the drawer. Inmate Davis said he did not know who the telephone belonged to. He said he called his mother direct, twice, the Sunday before the incident He said his mother's number is [redacted].[2]

Based on the evidence presented, DHO Mitchell concluded that Davis committed the offense as charged. In his written report, the DHO described the specific evidence relied upon in reaching this conclusion.

> The finding is based on the written statement of R. Ramsey, Correctional Officer, that on January 5, 2009, . . . she searched your assigned cell . . . and discovered a cellular telephone under the bottom desk drawer.

> The DHO relied upon as evidence, the memorandum provided by V. Williams, Lieutenant, which states you were interviewed on January 9, 2009, regarding the cellular telephone. You said you kept items in the bottom

---

[2] *Id.* Ex. A at 4.

drawer and that your roommate kept items in the top drawer. . . . You said you and your roommate were cool, but that you did not have much to say to each other. You said the telephone did not belong to you and you did not know if it belonged to your roommate. You said on January 4, 2009, you called your mother twice. You were interviewed again on January 19, 2009, and reiterated that you called your mother twice on January 4, 2009. During one of the calls, you asked her to send you some money. Inmate [redacted] was interviewed and said he used the top drawer, not the bottom drawer and that the telephone did not belong to him.

The DHO also relied upon as evidence, a photocopy of the cellular telephone and the location it was found. . . . Also, the monitor recorded call report documents you called [Petitioner's mother's number] one time on January 4, 2009, which was at 5:40 p.m. . . . The DHO believes you called your mother from the cellular telephone and forgot, which is why you told staff you called twice. Also, you told the lieutenant that you and your roommate were cool, however, you stated otherwise to the DHO.[3]

Based on these findings and the conclusion that Davis committed the offense, DHO Mitchell sanctioned Davis. The DHO disallowed forty days of good conduct time, imposed sixty days disciplinary segregation, and took away telephone and visiting privileges for 365 days. The DHO also recommended a disciplinary transfer.

In his petition, Davis contends that although Correctional Officer Ramsey found the phone in what he describes as a "common area" accessible to approximately eighty other inmates, only he received an incident report charging him with possession of a hazardous tool.[4] Davis asserts that, in an effort to defend himself, he made several written requests for information regarding the type of telephone discovered and a list of the numbers called on the telephone, but that he received no response to these requests. He contends that a review of his Inmate Telephone System ("ITS") records would show that he had "continued to use the ITS

---

[3] *Id.* Ex. A at 6.

[4] Pet. 3.

system to make phone calls up to the discovery of the cell-phone."[5]  Thus, he argues that he "was hindered in preparing an adiquite [sic] defense."[6]  He maintains that the Bureau of Prisons' policy which makes it the responsibility of inmates to keep the areas assigned to them free from contraband endangers inmates by forcing them to police their own living areas.  Finally, Davis alleges that DHO Mitchell was biased and determined his guilt before conducting the hearing.

## LEGAL STANDARD

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.[7]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[8]  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[9]  If the moving party meets this burden, the nonmovant must show that specific facts exist over which there is a genuine issue for trial.[10]

---

[5] *Id.*

[6] *Id.*

[7] FED. R. CIV. P. 56(a).

[8] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

[10] *Little*, 37 F.3d at 1075.

A prisoner's challenge to a disciplinary action may fall within the scope of § 2241.[11] Relief is not available, however, unless the petitioner shows that prison authorities deprived him of some right secured by the Constitution or laws of the United States.[12] Moreover, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."[13] A recognized liberty or property interest must be at stake before a due process claim is cognizable.[14] Accordingly, a petitioner is not entitled to due process protections in prison disciplinary hearings unless he is subjected to sanctions which "impose[ ] atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life."[15]

A federal prisoner has a liberty interest in his accumulated good-time credit.[16] Thus, the "revocation of such credit must comply with minimal procedural requirements."[17] However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of

---

[11] See United States v. Cleto, 956 F.2d 83, 84 (5th Cir.1992) ("Cleto's claim should have been filed as a petition for writ of habeas corpus under 28 U.S.C. § 2241, as he challenges the execution of his sentence rather than the validity of his conviction and sentence."); Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) ("[A]ppellant's petition to expunge the Bureau's disciplinary sanctions from his record, including the loss of good time credits, as a challenge to the execution of his sentence rather than the underlying conviction, is properly brought via an application for a writ under § 2241.").

[12] See Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness."); Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir. 1995); Hilliard v. Board of Pardons and Paroles, 759 F.2d 1190, 1192 (5th Cir. 1985).

[13] Sandin v. Conner, 515 U.S. 472, 478 (1995).

[14] Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972).

[15] Sandin, 515 U.S. at 484.

[16] Henson v. U.S. Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000).

[17] Id.

rights due a defendant in such proceedings does not apply."[18]  At a minimum, the prisoner is

entitled to: (1) advance written notice of the disciplinary charges; (2) an opportunity to present

evidence in his defense; and (3) a written statement by the factfinder regarding the evidence

relied on and reasons for the disciplinary action.[19]  Additionally, there must be "some evidence"

which supports the disciplinary decision.[20]  Furthermore, a court's determination "whether this

standard is satisfied does not require examination of the entire record, independent assessment of

the credibility of witnesses, or weighing of the evidence."[21]

## ANALYSIS

A district court must have jurisdiction over either the prisoner or his custodian to

entertain a 28 U.S.C. § 2241 petition.[22]  The writ does not work upon the prisoner seeking relief,

"but upon the person who holds him in what is alleged to be unlawful custody."[23]  In habeas

corpus cases, the warden, as immediate custodian, is the only proper respondent.[24]  Davis has

---

[18] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[19] *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. 563-67).

[20] *Id.*

[21] *Id.* at 455; *see also Smith v. Rabalais*, 659 F. 2d 539, 545 (5th Cir. 1981) ("[T]he court may act only where arbitrary or capricious action is shown . . . This means the prison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of prison officials.")

[22] *United States v. Brown*, 753 F.2d 455, 456 (5th Cir. 1985).

[23] *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-495 (1973); *Blau v. United States*, 566 F.2d 526, 527 (5th Cir. 1978).

[24] *Mounce v. Knighten*, 503 F.2d 967, 969 (5th Cir. 1974).

correctly named M. Travis Bragg,[25] the Warden of the Federal Correctional Institution-La Tuna and his current custodian, as Respondent. However, the remaining Bureau of Prisons employees named as Respondents are not proper party respondents.[26] Therefore, the Court will deny all claims against them.

The record demonstrates that the prison authorities afforded Davis at least the minimal procedural requirements to satisfy due process. They provided Davis with (1) a written notice of the charges at least twenty-four hours before the proceedings,[27] (2) an opportunity to call witnesses and present evidence in his defense,[28] and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.[29] Moreover, DHO Mitchell's written incident report alone provides some evidence of Davis's guilt.[30] As indicated in his report, the DHO relied upon the statement of the reporting officer, which documented where the cellular telephone was located in Davis's cell. Additionally, the DHO relied upon Davis's conflicting statements regarding his use of the drawer under which the telephone was found, the calls he made before the telephone was discovered, and the degree to which he got along with the

---

[25] Davis incorrectly spelled the name as Briggs in his petition. The correct spelling is Bragg.

[26] The other current or former Bureau of Prison employees Davis identifies as Respondents include (1) Warden Constance Reese, (2) Lieutenant V. Williams, (3) Unit Manager Sandra Kauffman, (4) Case Manager S. W. Stokes, (5) Correctional Counselor J. C. Sprayberry, and (6) DHO H. Mitchell.

[27] *See* Resp't's Mot. for Summ. J. Ex A at 1 (Incident Report) (showing an employee delivered a copy of the report to Davis at 7:28 p.m. on January 5, 2009); *id.* Ex. A at 4 (Discipline Hearing Officer Report) (showing the DHO held the hearing on February 18, 2009).

[28] *Id.* Ex. A at 2 (Inmate Rights at Discipline Hearing).

[29] *Id.* Ex. A at 6 (Discipline Hearing Officer Report).

[30] *Hudson v. Johnson*, 242 F.3d 534, 536-37 (5th Cir. 2001).

inmate who shared his cell.

Davis argues that the area in which the cellular phone was found was accessible to other inmates, thus reducing the probability that the phone belonged to him. The incident report provides evidence that correctional officer discovered a phone under the bottom drawer of the desk in the cell assigned to Davis. Moreover, Davis admitted during a subsequent interview that he kept items in the bottom drawer. Since the DHO considered this evidence in making his finding, there is "some" evidence in the record to support the DHO's conclusion that Davis was guilty of possessing the cellular phone.[31] This is not a case where the record is devoid of any evidence to support the DHO's decision. The mere fact that the phone was found in an area accessible to other inmates does not render a disciplinary finding that the inmate possessed contraband constitutionally infirm.[32] Accordingly, the Court is not free to retry the disciplinary charge and substitute its opinion for that of the DHO.[33]

Regarding Davis's complaint that he received no response to requests for information regarding the type of cellular telephone found and numbers called on the cellular telephone, the Court notes that Davis was charged with the possession, not the use, of the telephone in question. Thus, it is not apparent how identification of the manufacturer's brand or model designation of the telephone would have any bearing whatsoever on determining whether or not he committed

---

[31] See United States v. McKnight, 953 F.2d 898, 901 (5th Cir. 1992) ("Possession of contraband may be either actual or constructive. In general, a person has constructive possession if he knowingly has ownership, dominion, or control over the contraband itself or over the premises in which the contraband is located. Constructive possession need not be exclusive, it may be joint with others, and it may be proven with circumstantial evidence.").

[32] Le v. Berkebile, 2007 WL 1062187 (N.D. Tex. 2007), aff'd, 270 F. App'x 359 (5th Cir. 2008).

[33] See Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir. 2001) ("Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision.").

the disciplinary infraction with which he was charged.

To the extent Davis complains he was not provided access to his Inmate Telephone System records, again, he was charged with possession, not use, of the telephone. While the fact that Davis may have used the Inmate Telephone System before the cellular telephone was found might have some bearing on whether or not he used the cellular telephone, it neither proves nor disproves whether he possessed the phone.

Finally, to the extent Davis claims that he was denied a fair and impartial hearing because the DHO determined his guilt before the hearing, other than his assertion that it is so and his personal disagreement with the outcome of the disciplinary proceedings, he presents no evidence of bias on the part of the DHO. Such "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[34]

## CONCLUSION AND ORDERS

After carefully examining Davis's petition and Respondents' motion, the Court concludes that Davis has failed to establish that Respondents deprived him of some right secured by the Constitution or laws of the United States. Absent such a showing, federal habeas corpus relief is not warranted. Thus, Respondents have established that there is no genuine dispute about any material fact and the law entitles them to judgment. Therefore, the Court enters the following orders:

1.    The Court **GRANTS** Respondents' motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 11].

2.    The Court **DENIES** Petitioner Marvin Davis's *pro se* application for habeas

---

[34] *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

corpus under 28 U.S.C. § 2241 [ECF No. 7] and **DISMISSES** his cause **WITH**

**PREJUDICE**.

3.     The Court additionally **DENIES** all pending motions in this cause, if any, as

**MOOT**.

**SO ORDERED.**

**SIGNED this** _____ **day of May, 2011.**

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**